**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| **GIORGI BERIDZE,** | |
| **Petitioner,** | |
| **v.** | **CIVIL ACTION NO. 26-1611** |
| **JAMAL JAMISON, *et al.*,** | |
| **Respondents.** | |

**MEMORANDUM OPINION**

**Rufe, J.**                                                          **March 18, 2026**

Petitioner Giorgi Beridze is a noncitizen from Georgia who was recently detained by the

Department of Homeland Security ("DHS") under the Immigration and Nationality Act ("INA").

Before the Court is Beridze's 28 U.S.C. § 2241 petition, in which he argues that DHS's

imposition of mandatory detention without a bond hearing rests upon an unlawful interpretation

of 8 U.S.C. § 1225(b)(2), violates the Administrative Procedure Act ("APA"), violates the

*Accardi* doctrine, and denies him due process.[1] The government opposes the petition and argues

that its interpretation of § 1225(b)(2) is lawful and supported by the Fifth Circuit's recent

decision adopting its position.[2] The Court rejects the Fifth Circuit's reasoning and concludes that

Beridze does not qualify for mandatory detention under 8 U.S.C. § 1225(b)(2).

**I.      BACKGROUND**

Beridze is a citizen of Georgia who entered the United States at the Southern Border on

March 30, 2022.[3] He entered, then was encountered and detained by Customs and Border

---

[1] Pet. [Doc. No. 1].

[2] Resp'ts' Resp. Opp. Pet. [Doc. No. 4]; *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 502 (5th Cir. 2026).

[3] Pet. ¶ 2 [Doc. No. 1].

Protection ("CBP").[4] CBP interviewed Beridze and granted him permission to enter the United

States on a temporary basis.[5] Beridze was granted humanitarian parole under 8 U.S.C. §

1182(d)(5) while he pursued an application for asylum.[6] As a condition of his parole, Beridze

was required to check in with Immigration and Customs Enforcement ("ICE") at regular

intervals.[7] Petitioner timely filed an application for asylum with United States Citizenship and

Immigration Services ("USCIS"), which remains pending.[8] He attended all ICE check-ins as

required by his parole.[9]

On March 12, 2026, Beridze was arrested by ICE at a regularly scheduled check-in.[10] He

is currently detained at the Philadelphia Federal Detention Center.[11] Beridze has not received a

bond hearing.[12] His detention is the product of a new DHS policy, under which "individuals

'present in the United State without admission or parole' are now treated as 'applicants for

admission' subject to mandatory detention under § 1225(b)(2) rather than discretionary detention

under § 1226(a)."[13] The Board of Immigration Appeals ("BIA") adopted this interpretation in

*Matter of Yajure Hurtado*.[14]

---

[4] *Id*.

[5] *Id*. ¶¶ 2-3.

[6] *Id*. ¶ 3.

[7] *Id*.

[8] *Id*. ¶ 4.

[9] *Id*.

[10] *Id*. ¶ 5.

[11] *Id*. ¶ 1.

[12] *Id*. ¶ 5.

[13] *Yilmaz v. Warden of the Fed. Det. Ctr. Phila.*, No. 25-6572, 2025 WL 3459484, at *1 (E.D. Pa. Dec. 2, 2025) (quoting *Ndiaye v. Jamison*, No. 25-6007, 2025 WL 3229307, at *2 (E.D. Pa. Nov. 19, 2025)).

[14] 29 I. & N. Dec. 216 (B.I.A. 2025); *see* Pet. ¶¶ 7, 31 [Doc. No. 1].

On March 12, 202, Beridze filed the instant petition for a writ of habeas corpus under 28 U.S.C. § 2241.[15] This Court ordered the government to show cause why Beridze's petition should not be granted and scheduled a hearing on the matter.[16] The government filed an answer to the petition, and thereafter, by stipulation of the parties, the Court cancelled the show cause hearing and resolved to decide the case on the briefs.[17]

## II.    LEGAL STANDARD

Federal district courts are authorized to grant a § 2241 motion where the petitioner is detained "in violation of the Constitution or laws or treaties of the United States."[18] The petitioner has the burden of showing that the detention violates the Constitution of the United States or federal law.

## III.    DISCUSSION

### A.    Claim That Detention Violates the INA

As a preliminary matter, this Court finds that it has jurisdiction to review Beridze's claims under the INA. The government has not challenged this Court's jurisdiction, and this Court independently finds that any jurisdiction-stripping provisions of the INA do not apply.[19]

---

[15] Pet. [Doc. No. 1].

[16] 3/13/26 Order [Doc. No. 2].

[17] 3/17/26 Order and Stipulation [Doc. No. 6].

[18] 28 U.S.C. § 2241(c)(3); *Demore v. Kim*, 538 U.S. 510, 523 (2003) ("[T]he Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings." (citations and quotation marks omitted)).

[19] 8 U.S.C. § 1252(g), 8 U.S.C. § 1252(a)(2)(B)(ii), and 8 U.S.C. § 1252(b)(9) do not apply to this case. Section 1252(g) bars review of "any cause of claim . . . arising from the decision or action of the Attorney General to [1] commence proceedings, [2] adjudicate cases, or [3] execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). It does not reach Beridze's petition, which challenges only his detention without a bond hearing, not the commencement of removal proceedings.

The limit on federal review in § 1252(a)(2)(B)(ii) concerns only a "decision or action of the Attorney General or the Secretary of Homeland Security" that is committed to those official's discretion. Authority under the detention statute is not a matter of discretion, *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001), so § 1252(a)(2)(B)(ii) does not preclude this Court's consideration of Beridze's petition.

Finally, § 1252(b)(9) "does not strip jurisdiction when aliens seek relief that courts cannot meaningfully provide alongside review of a final order of removal." *E.O.H.C. v. Secretary of United States Department of Homeland*

3

Next, the Court considers the merits of Beridze's argument that his detention violates the INA. While Respondents claim he is detained under § 1225(b)(2)(A), Petitioner correctly notes that he is not subject to mandatory detention under § 1225(b)(1)(A)(iii) because he is not an "alien who [has] not been admitted or paroled." Section 1225(b)(2) applies to "other aliens" as opposed to § 1225(b)(1)'s application to "aliens arriving in the United States and certain other aliens who have not been admitted or paroled." Because he has been paroled, Beridze is not subject to detention under § 1225(b)(1).[20]

Next, this Court determines whether mandatory detention provided for in § 1225(b)(2) extends to noncitizens who have resided in the United States for an extended period of time. This question has repeatedly been addressed by district courts, which have resoundingly ruled in favor of ICE detainee petitioners. In this District, each of the dozens of decisions addressing the issue has found that the scope of § 1225(b)(2) does not extend to the petitioners.[21] Regardless, "[t]his

---

*Security*, 950 F.3d 177, 186 (3d Cir. 2020). Beridze's argument that he is unlawfully detained does not challenge his removal. Section 1252(b)(9) does not apply.

[20] *See Vasquez-Rosario v. Noem*, Civ. A. No. 25-cv-7427, 2026 WL 196505, at *7 (E.D. Pa. Jan. 26, 2026); *Rodriguez-Acurio v. Almodovar*, -- F. Supp. 3d ---, 2025 WL 3314420, at * (E.D.N.Y. Nov. 28, 2025) ("[T]he statutory text does not read that a noncitizen is eligible for expedited removal if that person '*is* not currently on parole.' Instead, it ties the ability to be designated for expedited removal to whether the noncitizen 'has not *been* ... paroled,' leaving open the possibility that 'whether a noncitizen's parole is active, or has expired or been terminated, does not matter.'").

[21] *See, e.g., Demirel v. Fed. Det. Ctr. Phila.*, No. 25-5488, 2025 WL 3218243 (E.D. Pa. Nov. 18, 2025) (noting that, as of November 18, 2025, 282 of 288 district court decisions had found that the application of § 1225(b)(2) to noncitizens residing in the United States is unlawful); *Cantu-Cortes v. O'Neill*, No. 25-6338, 2025 WL 3171639 (E.D. Pa. Nov. 13, 2025); *Kashranov v. Jamison*, No. 25-5555, 2025 WL 3188399 (E.D. Pa. Nov. 14, 2025); *Ndiaye v. Jamison*, No. 25-6007, 2025 WL 3229307 (E.D. Pa. Nov. 19, 2025); *Patel v. McShane*, No. 25-5975, 2025 WL 3241212 (E.D. Pa. Nov. 20, 2025); *Centeno Ibarra v. Warden of the Fed. Det. Ctr. Phila.*, No. 25-6312, 2025 WL 3294726 (E.D. Pa. Nov. 25, 2025); *Flores Obando v. Bondi*, No. 25-6474, 2025 WL 3452047 (E.D. Pa. Dec. 1, 2025); *Yilmaz v. Warden of the Fed. Det. Ctr. Phila.*, No. 25-6572, 2025 WL 3459484 (E.D. Pa. Dec. 2, 2025); *Conde v. Jamison*, No. 25-6551, 2025 WL 3499256 (E.D. Pa. Dec. 5, 2025); *Bhatia v. O'Neill*, No. 25-6809, 2025 WL 3530075 (E.D. Pa. Dec. 9, 2025); *Anirudh v. McShane*, No. 25-6458, 2025 WL 3527528 (E.D. Pa. Dec. 9, 2025); *Picon v. O'Neill*, No. 25-6731, 2025 WL 3634212 (E.D. Pa. Dec. 15, 2025). There have been a multitude of additional decisions ruling against the government since December 15, 2025. Gov't Resp. at 2 n.1 [Doc. No. 4.]; *see, e.g.*, *Kanaut v. Rose*, No. 25-6869, 2026 WL 36690 (E.D. Pa. Jan. 6, 2026); *Francois v. Noem*, No. 25-7334, 2026 WL 27565 (E.D. Pa. Jan. 5, 2026); *Lara Cordon v. Jamison*, No. 25-6937, 2025 WL 3756948 (E.D. Pa. Dec. 29, 2025)*; Kumar v. McShane,* No. 25-6238, 2025 WL 3722005 (E.D. Pa. Dec. 23, 2025).

Court considers each case on an *ad hoc* basis, and its rulings turn on the facts of each case at issue."[22]

The tools of statutory interpretation weigh against a reading of § 1225(b)(2) that applies to Beridze. The unambiguous plain meaning of an "applicant for admission" who is "seeking admission" is a noncitizen at a port of entry seeking to cross into the United States, not someone who has already resided in the United States for years.[23] Rather, the detention of noncitizens like Beridze, who have long been present in the United States, "is governed by § 1226(a), which entitles them to a bond hearing before continued detention is permitted."[24] Section 1226(a)'s predominance is further underscored by the titles of § 1225 and § 1226, as well as by agency practice, the rule against superfluity, recent amendments to § 1226, and the canon of constitutional avoidance.[25]

The Court need not defer to, and indeed rejects, the reasoning of the Fifth Circuit in *Buenrostro-Mendez v. Bondi* that "an 'applicant for admission' is necessarily someone who is 'seeking admission.'"[26]

Statutory language "cannot be construed in a vacuum. It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme."[27] The language of § 1225(b)(2)(A) supports limiting

---

[22] *Diallo v. Bondi*, No. 25-7421, 2026 WL 36534, at *2 (E.D. Pa. Jan. 6, 2026).

[23] *Yilmaz*, 2025 WL 3459484, at *3; *Centeno Ibarra*, 2025 WL 3294726, at *5.

[24] *Yilmaz*, 2025 WL 3459484, at *3; *see also Centeno Ibarra*, 2025 WL 3294726, at *4-7; 8 C.F.R. § 1236.1(c)(8), (d)(1) (stating that bond is available to noncitizens detained under § 1226(a) and that "the immigration judge is authorized to exercise the authority . . . to detain the [noncitizen] in custody, release the [noncitizen], and determine the amount of bond").

[25] *See Yilmaz*, 2025 WL 3459484, at *3; *Centeno Ibarra*, 2025 WL 3294726, at *5-7.

[26] 2026 WL 323330, at *5.

[27] *Roberts v. Sea-Land Servs., Inc.*, 566 U.S. 93, 101 (2012) (cleaned up).

this section to noncitizens who are just arriving or have recently arrived in the country. The phrase "seeking admission" connotes present, ongoing action. "Because some affirmative, present action is required, this phrase cannot apply to all noncitizens already residing in the United States."[28] The Fifth Circuit's reasoning is therefore inconsistent with the plain meaning of the statute.

The Fifth Circuit and the government's interpretation of § 1225(b)(2)(A) also violates the rule against surplusage. "[E]very clause and word of a statute should have meaning," and "no clause, sentence, or word shall be superfluous, void, or insignificant."[29] If "an applicant seeking admission" is the same as "an applicant for admission," then "seeking admission" is superfluous. "'Congress' choice of words is presumed to be deliberate' and deserving of judicial respect."[30] Therefore, this Court must find that "seeking admission" has some additional meaning.

Further, Congress recently adopted provisions in § 1226 that would be superfluous under the government's interpretation. The new provisions require a noncitizen be detained without a bond hearing if he enters the country illegally and is subsequently convicted or charged with certain crimes.[31] "Under the government's interpretation, § 1225 would require such mandatory detention regardless of criminal charges or convictions. If this was the case, Congress would

---

[28] *Centeno Ibarra*, 2025 WL 3294726, at *5.

[29] *United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023) (internal quotation marks omitted).

[30] *SAS Inst., Inc. v. Iancu*, 584 U.S. 357, 364 (2018) (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 353 (2013)).

[31] 8 U.S.C. §§ 1226(c)(1)(B), 1227(a)(2)(A)(iii) (requiring a noncitizen who is deportable because of an aggravated felony be detained); Laken Riley Act, Pub. L. No. 119-1 § 2, 139 Stat. 3, 3 (2025); 8 U.S.C. § 1226(c)(1)(E) (requiring mandatory detention of inadmissible noncitizens who have been charged with or convicted of certain crimes including burglary).

have no need to create additional requirements for mandatory detention. Congress intended these amendments to have 'real and substantial effect.'"[32]

Not only does past agency practice favor applying § 1226 to noncitizens like Beridze,[33] but Congress's passage of recent amendments to § 1226 also serves as an endorsement of the longstanding past interpretation of § 1225(b)(2).[34] "When Congress adopts a new law against the backdrop of a 'longstanding administrative construction,' the Court generally presumes the new provision works in harmony with what came before."[35] Because Congress recently revisited the detention provisions of the INA, including § 1225 and § 1226, and added narrow categories of noncitizens subject to mandatory detention, the Court will continue with the longstanding interpretation that § 1225 covers noncitizens who are arriving or just arrived in the United States. Therefore, the Court concludes that § 1225 does not apply to Beridze.

Beridze may be detained under the INA, under § 1226(a) and the applicable regulations, only if he receives a bond hearing and the evidence shows that he presents a flight risk or a risk of endangering the community.[36] There is no recorded evidence that suggests Beridze is likely to flee or endanger the safety of others. Accordingly, a bond hearing is unnecessary, and the Court will order his immediate release.[37]

---

[32] *Centeno Ibarra*, 2025 WL 3294726, at *6 (quoting *Bufkin v. Collins*, 604 U.S. 369, 386 (2025)).

[33] *Id*.

[34] "It is well established that when Congress revisits a statute giving rise to a longstanding administrative interpretation without pertinent change, the 'congressional failure to revise or repeal the agency's interpretation is persuasive evidence that the interpretation is the one intended by Congress.'" *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 846 (1986) (citing *NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 274-75 (1974) (footnotes omitted)).

[35] *Monsalvo Velazquez v. Bondi*, 604 U.S. 712, 713 (2025) (quoting *Haig v. Agee,* 453 U.S. 280, 297-98 (1981)).

[36] *See Yilmaz*, 2025 WL 3459484, at *3; *Centeno Ibarra*, 2025 WL 3294726, at *4, *8 n. 69; 8 C.F.R. § 1236.1(c)(8), (d)(1).

[37] *See Karshranov*, 2025 WL 3188399, at *8 ("[A] habeas court has 'the power to order the conditional release of an individual unlawfully detained—though release need not be the exclusive remedy and is not the appropriate one in every case in which the writ is granted.'" (quoting *Boumediene v. Bush*, 533 U.S. 723, 779 (2008)).

### B.      Claims That Detention Violates the APA

In addition to claiming a violation of the INA, Beridze alleges violations of the APA by categorically revoking his parole.[38] While the government does not respond to these claims, nor address in any fashion the Secretary's grant and subsequent revocation of parole to Beridze, the Court will address these arguments briefly.

Under the APA, this Court must "hold unlawful and set aside agency action . . . found to be—arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "without observance of procedure required by law."[39] An agency abuses its discretion in committing an action when it "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."[40] In reviewing whether an agency action is arbitrary and capricious, the Court "determine[s] only whether the Secretary examined the relevant data and articulated a satisfactory explanation for his decision, including a rational connection between the facts and the choice made."[41]

Beridze was affirmatively granted parole pursuant to 28 U.S.C. § 1182 after his entry into the country. Under § 1182(d)(5)(A):

> The Secretary of Homeland Security may . . . in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall,

---

[38] Pet. ¶ 7 [Doc. No. 1].

[39] 5 U.S.C. § 706(2).

[40] *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 658 (2007) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

[41] *Dep't of Comm. v. New York*, 588 U.S. 752, 773 (2019) (quoting *Motor Vehicle Mfrs. Ass'm of U.S., Inc.*, 463 U.S. at 43) (internal quotation marks omitted).

8

in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.[42]

After parole has been granted, the Secretary of Homeland Security may only terminate parole "when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served."[43] While § 1182(d)(5)(A) includes a discretionary decision regarding the grant of parole, there is a mandatory component that requires parole not be revoked unless the purposes of parole have been served. Under the parole statute, immigration officials must "make individualized determinations" of grants of parole.[44] "Common sense suggests . . . that parole given only on a case-by-case basis is to be terminated only on such a basis."[45]

The only reasoning provided for Beridze's detention, and correlating revocation of parole, is the government's statement that the case stems from a "fundamental point of departure . . . relat[ing] to the correct interpretation of § 1225(b)(2)(A)."[46] DHS alleges no consideration of facts or particularized circumstances to Beridze that influenced its decision to revoke his parole and detain him without a hearing. As Beridze notes, DHS has not made a finding that Beridze is a danger to the community or a flight risk.[47] Further, Respondents make no argument that the "purposes of parole . . . have been served."[48] There is nothing on the record before the Court that

---

[42] 28 U.S.C. § 1182(d)(5)(A).

[43] *Id.*

[44] *Jean v. Nelson*, 472 U.S. 846, 857 (1985).

[45] *Doe v. Noem*, No. 25-1384, 2025 WL 1505688, at *1 (1st Cir. May 5, 2025).

[46] Resp'ts' Resp. Opp. Pet. at 3 [Doc. No. 4].

[47] Pet, ¶¶ 30-31 [Doc. No. 1].

[48] 28 U.S.C. § 1182(d)(5)(A).

9

suggests any "urgent humanitarian reasons or significant public benefit" that existed at the time of Beridze's parole no longer exist such that the purpose of parole has been served.[49]

The government's reasoning for the parole revocation does not reflect a "case-by-case" determination. Rather, it reflects a broad policy application based on new interpretation of a statute. Because DHS failed to consider Petitioner's individualized facts and circumstances, its revocation of Beridze's parole is arbitrary and capricious and an abuse of discretion, in violation of the APA.

Because Beridze's detention without a bond hearing violates the INA and APA, the Court need not reach his arguments under the *Accardi* doctrine or due process.

## IV.   CONCLUSION

Consistent with this Court's prior decisions, DHS lacked legal authority to mandatorily detain Petitioner Giorgi Beridze without a bond hearing under 8 U.S.C. § 1225(b)(2). The Court will grant his petition, and an order will be entered.

---

[49] 28 U.S.C. § 1182(d)(5)(A).